**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| In re:<br><br>CAPITAL ASSET MANAGEMENT, LLC,<br><br>　　　Debtor. | Case No.: 20-12204 SDM |
| Premier Trust, Inc., as Independent Trustee of the MINGA 2013 IRREVOCABLE TRUST,<br><br>　　　Plaintiff,<br><br>v.<br><br>CAPITAL ASSET MANAGEMENT, LLC; ROCHE DIAGNOSTICS CORPORATION and ROCHE DIABETES CARE, INC., PRIORITY HEALTHCARE CORPORATION D/B/A PRIORITY CARE; PRIORITY CARE PHARMACY SOLUTIONS, LLC; PRIORITY CARE PHARMACY 2, LLC; VINCENT PRIORITY CARE PHARMACY, LLC D/B/A THE MEDICINE CHEST; VICKERS PRIORITY CARE PHARMACY, LLC; MAIN STREET DRUGS, LLC; PRIORITY CARE PROFESSIONAL STAFFING, LLC; MEDPOINT, INC.; MEDPOINT, LLC; MEDPOINT ADVANTAGE, LLC; MEDPOINT PROFESSIONAL HEALTHCARE STAFFING, LLC; KJM HOLDINGS, LLC; MINGA INVESTMENTS, LLC; KONIE MINGA; PHILLIP ANTHONY MINGA,<br><br>　　　Defendants. | Adversary Proceeding No.: _____ |

**ADVERSARY COMPLAINT**

COMES NOW Plaintiff PREMIER TRUST, INC., as the Independent Trustee of THE MINGA 2013 IRREVOCABLE TRUST, dated October 2, 2013, by and through their Counsel, and alleges and complains against Defendants, CAPITAL ASSET MANAGEMENT, LLC; ROCHE DIAGNOSTICS CORPORATION and ROCHE DIABETES CARE, INC., PRIORITY

HEALTHCARE CORPORATION D/B/A PRIORITY CARE; PRIORITY CARE PHARMACY SOLUTIONS, LLC; PRIORITY CARE PHARMACY 2, LLC; VINCENT PRIORITY CARE PHARMACY, LLC D/B/A THE MEDICINE CHEST; VICKERS PRIORITY CARE PHARMACY, LLC; MAIN STREET DRUGS, LLC; PRIORITY CARE PROFESSIONAL STAFFING, LLC; MEDPOINT, INC.; MEDPOINT, LLC; MEDPOINT ADVANTAGE, LLC; MEDPOINT PROFESSIONAL HEALTHCARE STAFFING, LLC; KJM HOLDINGS, LLC; MINGA INVESTMENTS, LLC; KONIE MINGA; PHILLIP ANTHONY MINGA (collectively, "Defendants") as follows:

## I.

## PARTIES

1. Plaintiff Premier Trust, Inc. ("Premier Trust" or "Plaintiff") is a Nevada corporation with its principal place of business at 4465 S. Jones Boulevard, Las Vegas, Nevada 89103. Premier Trust is the Independent Trustee of the Minga 2013 Irrevocable Trust, dated October 2, 2013 (the "Trust" or "Minga Trust"). The Plaintiff is represented by Derek A. Henderson, Attorney at Law, 1765-A Lelia Drive, Suite 103, Jackson, Mississippi 39216.

2. Defendant Capital Asset Management, LLC ("CAM" or "Debtor") is a Delaware limited liability company, with its mailing address at P.O. Box 521, Armory, Mississippi 38821. Debtor is a single-member LLC whose sole member is the Trust. Debtor filed the instant bankruptcy proceeding with this Court on or about June 26, 2020.

3. Defendant Roche Diagnostics Corporation ("Roche Diagnostics") is an Indiana corporation with its principal place of business at 9115 Hague Road, Indianapolis, Indiana 46250.

4. Defendant Roche Diabetes Care, Inc. ("Roche Diabetes Care") is a Delaware

corporation with its principal place of business at 9115 Hague Road, Indianapolis, Indiana 46250. Roche Diagnostics and Roche Diabetes Care shall herein be collectively referred to as "Roche."

5. Defendant Priority Healthcare Corporation d/b/a Priority Care ("PHC") is a corporation organized under the laws of the State of Delaware, with a mailing address at an Alabama Post Office Box and a principal place of business at 1006 Third Street North, Amory, Mississippi 38821. PHC is the sole owner of record of many of the Priority Care Pharmacy entities.

6. Defendant Priority Care Pharmacy Solutions, LLC ("Priority Care Pharmacy Solutions") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 211 10th Avenue North, Amory, Mississippi 38821. Priority Care Pharmacy Solutions is owned by PHC.

7. Defendant Vickers Priority Care Pharmacy, LLC ("Vickers Priority Care Pharmacy") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 31040 Northeast First Avenue Suite 5, Carbon Hill, Alabama 35549. Vickers Priority Care Pharmacy is owned by PHC.

8. Defendant Vincent Priority Care Pharmacy, LLC d/b/a The Medicine Chest ("Vincent Priority Care Pharmacy") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 4247 Highway 25, Vincent, Alabama, 35176. Vincent Priority Care Pharmacy is owned by PHC.

9. Defendant Priority Care Pharmacy 2, LLC ("Priority Care Pharmacy 2") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 4330 Highway 78 East 109, Jasper, Alabama 35501. Priority Care Pharmacy 2 is owned by PHC.

10.     Defendant Main Street Drugs, LLC ("Main Street Drugs") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 417 Main Street South, Amory Mississippi 38821. Main Street Drugs is owned by Monroe Pharmacy Corporation and is affiliated with PHC.

11.     Defendant Priority Care Professional Staffing, LLC ("Priority Care Professional Staffing") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 1006 Third Street North, Amory, Mississippi 38821. Priority Care Professional Staffing is owned by PHC.

12.     Defendant MedPoint, Inc. ("MedPoint, Inc.") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1006 Third Street North, Amory, Mississippi 38821. MedPoint, Inc. is a holding company that owns Defendants MedPoint, LLC and MedPoint Advantage, LLC.

13.     Defendant MedPoint LLC ("MedPoint, LLC") is a limited liability company organized under the laws of the State of Alabama, with its principal place of business at 1006 Third Street North, Amory, Mississippi 38821. MedPoint, LLC is owned by MedPoint, Inc. and affiliated with PHC.

14.     Defendant MedPoint Advantage, LLC ("MedPoint Advantage") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 1006 Third Street North, Amory, Mississippi 38821. MedPoint Advantage is owned by MedPoint, Inc. and affiliated with PHC.

15.     Defendant Professional Healthcare Staffing, LLC ("Professional Healthcare Staffing") is a limited liability company organized under the laws of the State of Delaware, with its principal

place of business at 1006 Third Street North, Amory, Mississippi 38821. Professional Healthcare Staffing is affiliated with PHC.

16. Defendant KJM Holdings, LLC ("KJM Holdings") is a limited liability company organized under the laws of the State of Delaware, with its mailing address at P.O. Box 521, Amory, Mississippi 38821. KJM Holdings is a single-member LLC whose sole member is Konie Minga.

17. Defendant Minga Investments, LLC ("Minga Investments") is a limited liability company organized under the laws of the State of Mississippi, with its principal place of business at 906 Rose Lane, Amory, Mississippi 38821.

18. Defendant Konie Minga ("Konie") is a Mississippi citizen residing in Amory, Mississippi. Konie is President, CEO, and CFO of PHC and the owner and President of record of most of the Priority Care pharmacies. Konie is married to Defendant Phillip Anthony Minga.

19. Defendant Phillip Anthony Minga ("Phillip") is a Mississippi citizen residing in Amory, Mississippi. Phillip oversaw, supervised, and/or directed the affairs of PHC and the Priority Care enterprise. Phillip is married to Defendant Konie Minga.

## II.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§157, 1334 and 1367 and 28 U.S.C. §§2201 and 2202.

21. This Court has personal jurisdiction over the Defendants.

22. This proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (E). Alternatively, this proceeding is "related to" Debtor's bankruptcy case, and if a non-core proceeding, Premier Trust consents to this Court's entry of final orders in this proceeding.

23.  This is an adversary proceeding pursuant to Rule 7001 of the Federal Rule of Bankruptcy Procedure.

24.  This Court has venue of this proceeding pursuant to 28 U.S.C. §1409(a).

25.  This Court may enter a final judgment herein, subject to review by the United States District Court pursuant to 28 U.S.C. §158.

### III.

### GENERAL ALLEGATIONS

**A.    Creation and Funding of the Minga Trust.**

26.  On October 2, 2013, Konie Minga ("Konie") as Settlor and Family Trustee, Phillip as Family Trustee, Premier as Independent Trustee, and Geneva A. Oswalt as Trust Protector ("Geneva"), established THE MINGA 2013 IRREVOCABLE TRUST ("Trust" or "Minga Trust").

27.  Pursuant to Article II, Section 2.1 of the Trust, the Settlor relinquished and renounced any interest in the Trust property:

> **Irrevocability and Renunciation of Interests**. … By this Trust Agreement, the Grantor intends to and does hereby relinquish absolutely all possession or enjoyment of, or the right to the income from, the trust property, and all rights to designate the persons who shall possess or enjoy the trust property or the income therefrom…[1]

28.  Pursuant to the terms of the Trust, Phillip A. Minga ("Phillip") and Konie are designated as the Family Trustees and Premier Trust is designated as the Independent Trustee. The Trust Protector was designated as Geneva Oswalt.

---

[1]  *See also* Trust at Article II, Section 2.4.1 ("**Discretionary Distributions of Income and/or Principal**. The Independent Trustee, in its sole, absolute and unreviewable discretion…shall have the power…to distribute to or apply for the benefit, enjoyment or use of (herein sometimes collectively referred to as "benefits") any one or more of the following permissible distributes: A. The Grantor's spouse, B. The descendants of the Grantor who are then living (even though not now living), including a descendant whose parent or parents are then living, and/or…").

29. The situs of the Trust is in the State of Nevada, *see, e.g.*, Trust at Article XI, Section 11.6 ("…Accordingly, unless the Trustee determines to move the situs of a trust hereunder to another jurisdiction...."),[2] and the Trust has been administered in Clark County, Nevada at all relevant times herein.

30. Further, Article XI, Section 11.6 of the Trust additionally provides, in part:

> **Governing Law**. It is the Grantor's intention that the original trust(s) created under this Agreement under the laws of the state of Nevada…Upon the death of the Grantor, all trusts hereunder shall continue to be governed by the laws of Nevada to the extent the trust continues to have sufficient connection with Nevada."

31. The beneficiaries of the Trust, at the time of its creation, were the children of Konie, namely Kristen Michelle Minga, Phillip Wesley Troy Minga and Heather Elizabeth Minga; however, on December 9, 2013, Geneva Oswalt, as the Trust Protection, exercised the rights under the terms of the Trust to add Konie as a beneficiary of the Trust.

32. To date, Konie has not received any distributions from the Minga Trust.

33. In connection with the creation of the Trust, Konie, as the sole Settlor, signed an Affidavit of Solvency. Said Affidavit attested, in part, as follows:

> 5. That there are no pending or threatened claims or proceeds that I reasonably anticipate may result in a judgment against me, and I am not a named defendant in any lawsuit or involved in any administrative proceedings as of this date, or a judgment debtor.
>
> 6. That following any transfers of my property to the trust structure I will remain solvent and able to pay my reasonably anticipated debts (including any claims or lawsuits against me) as they become due, with due consideration to be given to the extent to which I have otherwise provided for the payment of any such debts.

---

[2] *See also* Trust at Article IX, Section 9.1(A)(2) ("…Notwithstanding the foregoing or anything herein to the contrary, if the situs of a trust created hereunder changes from Nevada…").

    7. That I do not intend to incur or reasonably believe that I will incur debts beyond my ability to pay as they become due, and I do not have the actual intent to hinder, delay or defraud any creditor.

    10. That I am not, nor do I reasonably expect to be, under investigation by any Federal or State agency, or in violation of any statutes administered by, or empowering the Internal Revenue Service, the Federal Trade Commission, the Securities and Exchange Commissioner, the United States Postal Service, the Drug Enforcement Agency or the Federal Bureau of Investigation.

  34. Said attestations were true and accurate at the time the Affidavit of Solvency was executed by Konie.

  35. The Trust holds assets, including Capital Asset Management, LLC ("CAM" or "Debtor"). Debtor was initially formed in the State of Delaware on or about September 19, 2012 by Konie. However, following the creation of the Trust, the ownership interest in Debtor was transferred to the Minga Trust on December 9, 2013.

  36. On or about this same day, the Family Trustees of the Minga Trust, namely Phillip and Konie, accepted such assignment and agreed for the Trust to become a substitute member and to assume all of the obligations of the operating agreement of Debtor. On behalf of Debtor, Konie signed an Admission so as to allow the Trust to become a substitute member of Debtor. Similarly, the Trust signed a New Member's Consent on December 9, 2013 agreeing to be bound by the terms of Debtor's operating agreement.

**B. Funding of Capital Asset Management Trust Through 2013.**

  37. On October 10, 2012, Debtor established an investment account with T.D. Ameritrade ("Ameritrade CAM Account"). The account application documents were signed solely by Konie, as the sole member of Debtor.

38.   Debtor was initially funded with $500,000.00 on October 17, 2012 by way of a transfer from MedPoint, LLC ("MedPoint"); said deposit being made to Debtor's Account at Ameritrade.  MedPoint is a pharmaceutical company owned and operated by MedPoint, Inc.

39.   Thereafter, on October 25, 2012, Minga Investments transferred certain equities it held at E*Trade Securities LLC to Debtor in the approximate amount of $5.5 million.

40.   On or about September 20, 2013, Debtor transferred funds from its account held at Bank of America in the name of Asset Capital Management, LLC in the amount of $2,250,000.00 to its account at Ameritrade.

41.   On December 4, 2013, Debtor transferred the total amount of $1.6 million from its account at Ameritrade and deposited the same into its account at Bank of America.

42.   As of December 31, 2013, the account balance of Debtor for the account held with Bank of America totaled $2,093,148.57.

43.   In 2014, there were no deposits or withdrawals in Debtor's account held with Ameritrade.  As of December 31, 2014, the balance of Debtor's Ameritrade Account xxx-xx8902 totaled $8,899,111.87.

44.   Between the accounts held by Debtor at Bank of America account (as of December 2013) and the Ameritrade (as of December 2014), the balances totaled $10,992,260.44.

45.   On or about December 23, 2015, a deposit in the amount of $3.5 million was made into the Ameritrade CAM Account by KJM Holdings.

46.   On or about May 9, 2016, a deposit in the amount of $3,250,000.00 was made into the Ameritrade CAM Account by KJM Holdings.

47.   On or about November 11, 2016, a deposit in the amount of $5 million was made into

the Ameritrade CAM Account by KJM Holdings.

48. There were no deposits made into the Ameritrade CAM Account in 2017.

49. On or about January 16, 2018, a deposit in the amount of $5 million was made into the Ameritrade CAM Account by KJM Holdings.

50. On or about September 21, 2018, a deposit in the amount of $7 million was made into the Ameritrade CAM Account by KJM Holdings.

**C.      Complaint Filed Against Phillip, Konie, Debtor and Other Defendants.**

51. In late 2013, Phillip and Konie, through various pharmaceutical companies owned and operated by them directly or indirectly commenced doing business with Roche Diagnostics Corporation and Roche Diabetes Care, Inc. (collectively, "Roche).

52. On September 11, 2018, Roche filed litigation against Phillip, Konie, Debtor, Minga Investments and a number of other defendants; said cases were filed in the United States District Court, Northern District of Alabama, Southern District, in Case No. 2:18-00521 AKK; 2:18-00522 AKK; 2:18-00523 AKK and 2:18-cv-01479 KOB (hereinafter "Roche Litigation").

53. The Complaint was thereafter amended on two separate occasions by Roche. The Second Amended Complaint alleges that Phillip and Konie Minga's (collectively "Minga") business dealings with Roche commenced in late 2013. Specifically, the Second Amended Complaint alleges that since 2013 entities within the Priority Care enterprise have submitted insurance claims for retail blood glucose test strips manufactured by Roche.

54. Attached as Exhibit A to the Second Amended Complaint are the purported number of claims each Priority Care entity submitted to Roche since 2013. Of significance is the fact that in 2013 and 2014, there were minimal claims were adjudicated.

55. The adjudications for the claims submitted in 2013 totaled only approximately $100,000.00.

56. The only allegations relating to Debtor set forth in the Second Amended Complaint are as summarized as follows: (1) Konie transferred funds from an entity named KJM Holdings to the CAM Ameritrade Account; (2) in September 2018, Konie sought to deposit funds in the CAM Ameritrade Account from KJM Holdings; (3) Debtor received millions of dollars in fraudulent proceeds; and (4) the purpose of the transfer in September 2018 was to shield money from creditors and any judgment Roche obtains in the litigation.

57. None of the profits related to the 2013 or 2014 adjudications were transferred or otherwise deposited into the Ameritrade CAM Account. This is demonstrated by the fact that there were no deposits into the Ameritrade CAM Account subsequent to September 20, 2013 through December 31, 2014. As such, the balance as of December 31, 2014 in the Ameritrade CAM Account in the amount of $8,899,111.87 was not derived from any profits from Roche.

58. Similarly, the Bank of America CAM Account did not receive any deposits through December 2013, other than the transfer of the $1.6 million from the Ameritrade CAM Account. As such, the balance as of December 31, 2013 in the Bank of America CAM Account in the amount of $2,093,148.57 was not derived from any profits from Roche.

59. Many of the other deposits of funds into the Ameritrade CAM Account were not the result of profits derived from Roche.

60. On November 12, 2019, Roche, through the Roche Litigation, caused all of the assets held in the Ameritrade CAM Account to be liquidated and transferred to the Clerk of the Court for the United States District Court, Northern District of Alabama in the amount of $34,832,521.99.

61. The liquidation of the Ameritrade CAM Account resulted in a taxable event and substantial capital gains tax that is required to be paid to the United States Treasury prior to September 15, 2020. The total tax and estimated penalties on such tax are estimated to be $601,873.00. This amount is required to be paid no later than September 15, 2020 to the Internal Revenue Service.

62. On or about June 29, 2020, Debtor instituted the instant Chapter 11 bankruptcy proceeding with this Court (the "Bankruptcy Proceeding") (Case No. 20-12204).

## FIRST CAUSE OF ACTION – DECLARATORY RELIEF

**(Declaration as to the Identity of Property)**
**(Fed. R. Bankr. P. 7001, 28 U.S.C. §§ 2201 and 2202 and 11 U.S.C. §541(a))**
**[All Defendants]**

63. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs 1 to 62 of this Adversary Complaint as if fully set forth herein.

64. The Trust is the Debtor's Sole Member.

65. Debtor did not begin conducting business with Roche until late 2013.

66. As of December 31, 2013, the account balance of Capital Asset Management, LLC Debtor's account held at Bank of America totaled $2,093,148.57.

67. As of December 31, 2014, the Capital Asset Management, LLC Debtor's Ameritrade Account xxx-xx8902 totaled $8,899,111.87. Throughout 2014, no deposits or withdrawals were made into or out of Capital Asset Management, LLC Debtor's Ameritrade Account xxx-xx8902.

68. Pursuant to Federal Rule of Bankruptcy Procedure 7001, 28 U.S.C. §§ 2201 and 2202 and 11 U.S.C. §541(a), Premier Trust asks this Court to issue a declaratory judgment finding that: (a) the $2,093,148.57 formerly held in the Capital Asset Management, LLC Debtor's Bank of

America Account is the property of the bankruptcy estate; (b) the $8,899,111.87 formerly held in Capital Asset Management, LLC Debtor's Ameritrade Account xxx-xx8902 is the property of the bankruptcy estate; and (c) the remaining funds in any of the Debtor's prior accounts are the property of the bankruptcy estate of each respective Debtor.

### SECOND CAUSE OF ACTION – TURNOVER OF PROPERTY

**(Turnover of Property by Custodian)**
**(11 U.S.C. § 543(b))**

69. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs 1 to 68 of this Adversary Complaint as if fully set forth herein.

70. On November 12, 2019, Roche, through the Roche Litigation, caused all of the assets held in the Ameritrade CAM Account and other accounts to be liquidated and transferred to the Clerk of the Court for the United States District Court, Northern District of Alabama in the amount of $34,832,521.99.

71. To date, the Clerk of The Court for the United States District Court, Northern District of Alabama has control and possession of all of Debtor's assets, including, but not limited to, $2,093,148.57 formerly held in Debtor's Bank of America Account and $8,899,111.87 formerly held in Debtor's Ameritrade Account xxx-xx8902.

72. Pursuant to 11 U.S.C. §101(11), the Clerk of The Court for the United States District Court, Northern District of Alabama could be considered to be a "custodian."

73. Pursuant to 11 U.S.C. §542 and/or §543(b), Premier Trust requests that this Court order the Clerk of the Court for the United States District Court, Northern District of Alabama to immediately deliver to Capital Asset Management, LLC $10,992,260.44 from the Debtors'

$34,832,521.99 held by the Clerk of the Court and other funds to remaining bankruptcy estates as may be determined.

**WHEREFORE**, Premier Trust prays for judgment and additional relief against the Defendants as follows:

A) Declaratory judgment from this Court stating that the $2,093,148.57 held by the Capital Asset Management, LLC Debtor's Bank of America Account as of December 31, 2013 is the property of the bankruptcy estate;

B) Declaratory judgment from this Court stating that the $8,899,111.87 held by the Capital Asset Management, LLC Debtor's Ameritrade Account xxx-xx8902 as of December 31, 2014 is the property of the bankruptcy estate;

C) Declaratory judgment from this Court stating that any remaining funds held by the Clerk of The Court for the United States District Court, Northern District of Alabama are property of the other remaining bankruptcy estates in amounts as may be determined;

D) This Court ordering that the Clerk of The Court for the United States District Court, Northern District of Alabama, in possession of the Debtor's assets totaling $34,832,521.99, pay to the Capital Asset Management, LLC bankruptcy estate $10,992,260.44 and the remaining funds to the other bankruptcy estates in amounts to be determined; and

E) For any and all other legal and general relief that the Court determines to be just and appropriate under the circumstances.

DATED this 31st day of July, 2020.

Respectfully submitted,

By: s / Derek A. Henderson
DEREK A. HENDERSON

                                            Attorneys for Premier Trust, Inc.,
                                            Independent Trustee, of THE MINGA
                                            2013 IRREVOCABLE TRUST

**DEREK A. HENDERSON**
**Attorney at Law, MSB # 2260**
**1765-A Lelia Drive, Suite 103**
**Jackson, Mississippi 39216**
**(601) 948-3167**
**derek@derekhendersonlaw.com**